UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

MICHAEL FOGELMAN                              CIVIL ACTION NO. 07-1485
CHARLES KOTRLA

                                              JUDGE DOHERTY
VS.

                                              MAGISTRATE JUDGE METHVIN
MEAUX SURFACE PROTECTION, INC.

*RULING ON MOTION TO REMAND*
*(Rec. Doc. 5)*

Before the court is plaintiffs' motion to remand and for attorney's fees.  Defendant,

Meaux Surface Protection, Inc., filed an opposition, plaintiffs filed a reply memorandum, and

Meaux filed a response.[1]  For the following reasons, the motion to remand is **GRANTED.**

*Background*

This claim for unpaid wages was filed in the 15th Judicial District Court for Lafayette

Parish on July 23, 2007.[2]  Plaintiffs are Meaux's former President and Chief Operating Officer

(Fogelman) and former Operations Manager (Kotrla).  Meaux is a provider of maritime painting

and/or coating services to protect against corrosion of steel surfaces for platforms, drilling rigs,

and other marine and industrial structures primarily located in the Gulf of Mexico.[3]  In 2003,

Meaux was acquired by Muehlhan AG, a German company.[4]

---

[1] Rec. Docs. 12, 19, and 23.

[2] Rec. Doc. 1.

[3] Muehlhan AG, Interim Report First Half 2007, plaintiffs' Motion, Rec. Doc. 5, Exhibit C, Godoy, Vervilles affidavits.

[4] Meaux submits the affidavit of Rene Godoy, who states that Meaux "is owned by Muehlhan Surface Protection, Inc., located in Houston, Texas," and that Meaux and Muehlhan Surface Protection, Inc. are owned by Muehlhan AG, the German parent company.  Rec. Doc. 12-2, Exhibit A.

2

Meaux removed the action to this court on September 7, 2007, on grounds of diversity, alleging that "Meaux Surface Protection, Inc. . . is a Texas corporation with its principal place of business in Houston, Texas." [Rec. Doc. 1].

### Issues Presented

Plaintiffs argue that Meaux's principal place of business is in Louisiana, and that since plaintiffs are both Louisiana citizens, the parties are not diverse and this court has no jurisdiction.

Meaux contends that its principal place of business is in Texas, and this court has diversity jurisdiction.

### Applicable Law

### 1. *Burden of Proof - Subject Matter Jurisdiction*

Title 28 U.S.C. §1332(a) provides that federal district courts have original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."  A party may remove an action from state court to federal court if the action is one over which the federal court possess subject matter jurisdiction.  28 U.S.C. §1441(a).

"The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  Manguno v. Prudential Property and Cas. Insurance. Co., 276 F.3d 720, 723 (5th Cir.2002) (*citing* De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir.1995).  "To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." Manguno at 723 (*citing* Cavallini v. State Farm Mut. Auto Insurance. Co., 44 F.3d 256, 264 (5th Cir.1995)).  *See also* Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004).  "Any ambiguities are construed against removal

3

because the removal statute should be strictly construed in favor of remand." Manguno at 723

(*citing* Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir.2000)).

## 2. *Principal Place of Business*

Under 28 U.S.C. §1332(c)(1), "a corporation shall be deemed to be a citizen of any State

by which it has been incorporated and of the State where it has its principal place of business. .

.".  A corporation may have only one principal place of business for diversity purposes.  J.A.

Olson Co. v. City of Winona, 818 F.2d 401 (5th Cir. 1987).

The Fifth Circuit applies the "total activity" test to determine a corporation's principal

place of business.

> We apply the "total activity" test to determine a corporation's principal place of
> business.  This test requires us to consider two "focal points:" the location of the
> corporation's "nerve center" and its "place of activities."  We must examine the
> totality of the facts, including the corporation's organization and the nature of its
> activities, to determine which of these focal points predominates.  Generally,
> "when considering a corporation whose operations are far flung, the sole nerve
> center of that corporation is more significant in determining principal place of
> business ..., when a corporation has its sole operation in one state and executive
> offices in another, the place of activity is regarded as more significant..., but when
> the activity of a corporation is passive and the `brain' of the corporation is in
> another state, the situs of the corporation's `brain' is given greater significance...."

Teal Energy USA, Inc. v. GT, Inc., 369 F.3d 873, 876 (5th Cir. 2004), *citing*  J. A. Olson, 818

F.2d at 406, 411 (5th Cir. 1987).

In evaluating the "activity" of the corporation in question, the Fifth Circuit considers

whether the nature of the activity in question is "active" or "passive," and whether it is "labor-

intensive" or "management-demanding."  In J. A. Olson, the Fifth Circuit reasoned:

> We must consider the number of locations where the corporation carries on its
> activities; obviously, the *place* of operations of a corporation that carries on a
> single activity is more significant than one of many *places* of operations of a
> corporation with diffuse activities. Furthermore, we consider the importance of
> the particular activity to the corporate purpose and to the corporation as a whole;

4

significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity. We also see as significant the degree to which the corporation's activities bring it into contact with the community. In examining the corporation's local contacts, we look at the number of employees in the given locale and the extent to which the corporation participates in the community through purchase of products, supplies and services, sales of finished goods, and membership in local trade or other organizations.

818 F.2d at 411-12 (emphasis in original).

The Fifth Circuit has called Lurie Co. v. Loew's San Francisco Hotel Corp., 315 F.Supp. 405 (N. D. Cal.1970) a "classic case" illustrating the dominance of the place of activities over the nerve center as a means of determining principal place of business.  J. A. Olson, 818 F.2d at 409. See also Vidalia Dock & Storage Company, Inc. v. Donald Engine Service, Inc., No. 04-1177, 2007 WL 2963655, *5 (W.D. La. Oct. 9, 2007).  In Lurie, the defendant company was incorporated in Delaware and had its principal office and all officers located in New York.  Its sole activity, however, was the operation of the Mark Hopkins hotel in San Francisco.  The court noted that the California hotel comprised the corporation's only asset, employed the vast majority of its workers, and that day-to-day management took place in California.  The court concluded that California was the defendant's principal place of business within the meaning of §1332(c), noting that "'[w]here ... the corporation has its physical operations concentrated in one state and its administrative or executive offices in another state, the place of operations is more frequently considered as decisive.'" Lurie, 315 F.Supp. at 412 (quoting 1 Moore's Federal Practice 717.77, P0.77(3.-4)); J.A. Olson Co., 818 F.2d at 409.

***Analysis***

Meaux is a Texas corporation registered to do business in Louisiana.  Records filed with the Louisiana Secretary of State show Meaux's "principal office" at 701 Robley Drive, Suite 102,

Lafayette, La. 70503."[5]  Muehlhan's 2006 Annual Report lists Meaux among the 32 companies

worldwide which Muehlhan owns or controls.  Meaux's address on the report is "Lafayette,

USA."[6]  On the same report, in the "Addresses Worldwide" section, Muehlhan lists only three

companies in North America:  Certified Coatings Company in Concord, California; Sipco

Surface Protection, Inc. in Houston; and "Meaux Surface Protection, Inc., 701 Robley Drive,

Suite 102, Lafayette LA 70503."[7]  Muehlhan's 2007 Interim Report also refers to "[o]ur

subsidiary company Meaux Surface Protection Inc., Lafayette."[8]  Meaux's website as of

September 18, 2007, showed Meaux's address on Robley Drive in Lafayette.[9]  The undersigned

notes that as of this date, Meaux's website still lists a Lafayette address as its corporate office.[10]

---

[5] Motion to Remand, Rec. Doc. 5, Exhibit A.

[6] Id., Exhibit B, p. 58.

[7] Id., Exhibit B, p. 62.

[8] Id., Exhibit C, p. 17.

[9] Id, Exhibit D.  The undersigned notes that as of this date, Meaux's website address is
listed

[10] Meaux Surface Protection, Inc., online, April 25, 2008,
http://www.meauxsp.com/index.htm  shows:

    Corporate Office
    2720 W. Willow St.
    Scott, LA 70583
    Phone: 337-231-0052
    Fax: 337-231-0065
    Operations Fax: 337-267-1199

6

Plaintiffs contend that at all times the vast majority of Meaux's business operations and activity were conducted in Louisiana.  Plaintiff Michael Fogleman submitted an affidavit stating as follows:[11]

- He was employed by Meaux from August 1997 to December 2006, and served as President and COO from November 2005 to December 2006;

- At all times, "the vast majority of Meaux's business operations and activity" were conducted in Louisiana;

- Meaux provides "surface protection services for offshore platforms and drilling rigs, particularly in the Gulf of Mexico off the coast of Louisiana;"

- During the time he was directing operations, "the vast majority of business functions, including operation, human resources and marketing, were conducted out of Meaux's corporate offices" on Robley Drive in Lafayette;

- "The company maintained a satellite office and an equipment and marshaling yard in Broussard, Louisiana;"

- "All scheduling and dispatching of Meaux employees to job-sites was conducted out of the Broussard office."

- "The vast majority of Meaux employees who were dispatched offshore, left out of Louisiana coastal communities including Fourchon, Morgan City, Cameron, Intracoastal Citiy and Venice."

- "All of Meaux's operating revenue was attributable to operations conducted out of the Lafayette corporate office and the Broussard satellite office."

Plaintiffs contend that "there is no indication that Meaux has changed its operations since Mr. Fogleman resigned from the company in December, 2006, as evidence (sic) by Meaux's recent annual reports, the records of the secretary of state and Meaux's current Web site."[12] Meaux's Louisiana operations "are paramount to its corporate purpose and to the corporation as a

---

[11]  Motion to Remand, Rec. Doc. 5-8 (Exhibit F).

[12]  Memorandum in Support of Motion to Remand, Rec. Doc. 5-2, pp. 4-5.

whole," and that regardless of whether some of Meaux's corporate executives operate out of Hamburg, Germany, or Houston, Texas, "Meaux's Louisiana operations are responsible for the generation of all of Meaux's operating revenues."[13]

Plaintiffs' argue that because Meaux's activities in Louisiana are not purely passive, the general rule in J. A. Olson applies: "when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant." J. A. Olson, 818 F.2d at 406. Under this rule, plaintiffs argue that Meaux's principal place of business is in Louisiana.

In its opposition to the motion to remand, Meaux argues that the exclusive function of the Lafayette office and its employees was to dispatch laborers to job sites that its customers requested to be resurfaced, and to prepare cost estimates.[14]   Meaux submits the affidavits of Messrs. Elias Vervilles and Rene Godoy.  Vervilles was Meaux's CEO on the date plaintiff's petition was filed, July 23, 2007, and had been in that position for 2 ½  years.  Godoy was Meaux's COO on July 23, 2007, but succeeded Vervilles as Meaux's President and CEO at the end of July, 2007.  The affidavits each aver that Meaux's principal place of business operations on July 23, 2007, was Houston, Texas (Vervilles affidavit, para. 24; Godoy affidavit, para. 20).

The affidavits state that on the date the instant suit was filed, July 23, 2007, the following factors were present: [15]

---

[13]  Memorandum in Support of Motion to Remand, Rec. Doc. 5-2, p. 6.

[14]  Meaux's Opposition, Rec. Doc. 12, p. 8.

[15] Although jurisdiction is decided based on plaintiffs' claims as they existed at the *time of the removal*, September 7, 2007, the affidavits include jurisdictional facts as of the time of the *filing* of the complaint, July 23, 2007.  However, in this case, plaintiffs have not objected on this basis, and there is no indication from the briefs that there was a change in Meaux's operations

8

- Meaux's principal office in Louisiana was on Robley Drive in Lafayette, but its corporate offices were in Houston;

- Five of its nine crews were working on rigs in Louisiana waters, one crew was in a shipyard in Texas, and three were working in international waters.[16]  (No information is provided regarding the size of the crews);

- Meaux does not sell goods, but rather provides services to its customers' oil platforms located throughout the Gulf of Mexico;

- The executive decisions related to Meaux's operations were made in Houston by Meaux's directors and corporate officers. On the date suit was filed,[17] two of the three directors lived in Germany and one lived in Texas; the two corporate officers, Vervilles and Kim Hardin, both lived in Texas;

- Godoy, Meaux's President and COO on July 23, 2007 (currently President and CEO), resides in Baton Rouge, Louisiana and travels to Houston twice monthly to call on Meaux's customers and complete the Meaux business that cannot be conducted out of the scheduling office;

- Meaux employed 103 individuals, 84 of whom lived in Texas and 19 of whom lived in Louisiana;

- Only seven employees staffed Meaux's Lafayette office;

- Meaux's employees were primarily hired out of recruiting offices Meaux maintained in Corpus Christi and Brownsville Texas;

- Meaux had seven customers: five were located in Texas, two in Louisiana;

- The sole function of the Lafayette office was to (1) schedule employees to complete work on job sites primarily located in the Gulf of Mexico, and (2) submit project bids to Houston customers that requested cost estimates.

- All billing disputes and quality control issues were resolved in Houston;

---

during interim.  The undersigned therefore concludes that the incorrect timing of the submission is immaterial to the court's decision.

[16]  Id.

[17]  But see fn. 15, *supra*.

- When the Lafayette office dispatched employees to a job site, they were "shuttled" from their residences in Texas to the job site;

- As of July 23, 2007, "any and all cash receipts that Meaux's Lafayette office received were immediately routed to Muehlhan's Euro Investment Sweep account at a bank in Houston.;

- Meaux's accounting procedures were managed by Erich Stolz, who resided in Houston and who became CFO on July 31, 2007;

- Meaux's financial performance and cash flow was controlled by Muehlhan's accounting department, located in Houston, cash disbursements were made in Houston; and financial records were kept in Houston.

Meaux argues that its operational success depended on the Houston's office's management of services that were rendered on job sites at various locations throughout the Gulf of Mexico, and that its Louisiana scheduling office and storage facility were merely passive components of its business operation. Meaux contends that Texas is the situs of its "brain" and, thus, should predominate when determining Meaux's principal place of business.

Meaux also contends that its Lafayette office became substantially dependent on Houston's managerial guidance after plaintiffs "abruptly" left the company in December, 2006, and that Fogleman had no personal knowledge of Meaux's operations after he left.

Meaux relies on Village Fair Shopping Center Co. v. Sam Broadhead Trust, 588 F.2d 431, 433 (5th Cir. 1979) and Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 166 (5th Cir. 1998). In Village Fair, a corporation's single largest piece of real estate was located in Mississippi but its managerial activity was conducted in New York. The corporation had two other investments: $125,000 in a shopping center in California, and $400,000 in short-term commercial paper and bank accounts in New York. Village Fair, 588 at 433. The court found that the New York management activities were more significant than the

fact that the corporation's asset was located in Mississippi.  <u>Village Fair</u>, 588 F.2d at 433.  The

court concluded that the corporation's principal place of business was in New York.

In <u>Nauru</u>, the issue was whether the principal place of business of Nauru, a Delaware

corporation, was in Australia, Texas or in Nauru, a small island republic in the south Pacific.

The corporation's only asset was a Texas upscale residential housing development with a golf

course; and its sole purpose was to acquire the asset.  <u>Nauru</u>, 138 F.3d at 162-64.  The court

concluded that the corporation was a passive investor in land and its primary activities were

management-oriented. Nauru's substantive and managerial-level decisions were not made in

Texas, but where its directors and two of its three officers lived.  Thus, the court found that

Nauru's nerve center was in Australia or Nauru and concluded that its principal place of business

was not in Texas.

Because Meaux's business is to generate revenue by providing services to oilfield clients,

Meaux is not a "passive investor" as in <u>Nauru</u>, nor is it simply the owner/manager of real estate

as in <u>Village Fair</u>.  Accordingly, these cases are distinguishable.

As noted above, the court must apply the "total activity" test and the lessons of  <u>J. A.

Olson</u>:

> Generally, when considering a corporation whose operations are far flung, the sole
> nerve center of that corporation is more significant in determining principal place
> of business ..., when a corporation has its sole operation in one state and executive
> offices in another, the place of activity is regarded as more significant..., but when
> the activity of a corporation is passive and the `brain' of the corporation is in
> another state, the situs of the corporation's `brain' is given greater significance...

<u>J. A. Olson</u>, 818 F.2d at 406 (5th Cir. 1987).

Here, neither party contends that Meaux should be considered a "far flung" corporation,

nor can it be said that Meaux's activities are "passive."  Accordingly, under the reasoning of <u>J. A.</u>

11

Olson, more significance should be given here to the *place of activity* as opposed to the situs of the corporation's "brain."

While it is clear that certain management and executive decisions were not made in Louisiana, and certain recruiting efforts may have taken place in Texas, it is clear that the substantial majority of Meaux's day-to-day revenue-generating activities were organized, supervised, managed, and staged in Louisiana, and that the majority of work was performed on rigs off the coast of Louisiana.

Furthermore, the affidavits submitted by Meaux's officers are more persuasive on the point of what activities *did not* take place in Louisiana as opposed to what activities actually took place in Houston.  Meaux states that on the date in question, two of the three Meaux directors lived in Germany, and one – Vervilles – lived in Texas.  Meaux states that Vervilles was also one of its two corporate officers.  The other corporate officer - Kim Hardin – also lived in Texas.  Meaux fails to explain why Godoy – Meaux's President and Chief Operating Officer on July 23, 2007 – is not included among Meaux's officers on the date in question.  Godoy's affidavit shows that he lives in Baton Rouge and that he "travels to Houston twice monthly to call on Meaux's customers and complete the Meaux business that cannot be conducted out of the scheduling (i.e. Lafayette) office."

While Meaux avers that the executive decisions related to Meaux's operations were and are made in Houston by Meaux's directors and officers, no detail is provided.  How were discussions and executive decisions made and who made them?  Did the German directors hold meetings in person or by telephone, and how often?  Were executive meetings held daily, weekly, monthly, or quarterly, and who attended and how?  How often did Godoy  - the President and COO at the time – actually work from his home in Baton Rouge, or in the Lafayette

12

corporate office?  Who staffed the Houston office, and were the job duties exclusively devoted to Meaux's operations in Lafayette?

Although Meaux offers evidence that during the relevant time period, it had work crews at other sites, it admits that the majority – five of nine – were working on rigs in Louisiana waters.  Furthermore, Meaux does not provide the relative number of employees at the various sites, or describe the nature of the work, the revenue generated by the contracts, or otherwise attempt to demonstrate that non-Louisiana-Gulf activities were a significant part of its activities within a relevant time frame.  Furthermore, both now and at the time of removal, Meaux's own corporate documents show Meaux's place of business in Lafayette, Louisiana.

Meaux contends that the majority of Meaux employees lived in Texas, that Meaux maintained recruiting offices in Texas, and that the majority of clients were located in Texas. However, these are not among the factors considered the most significant for purposes of analysis.  The Fifth Circuit instructs the court to consider "the importance of the particular activity to the corporate purpose and to the corporation as a whole; significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity."  J. A. Olson, 818 F.2d at 411-412.

Here, there is no dispute that the sole source of Meaux's income was its surface protection services, and that the majority of those services were and are provided to platforms and rigs off the coast of Louisiana by crews who assemble in, are dispatched from, and return to Louisiana.  The fact that some of the rigs and platforms may be owned by companies with corporate offices in Texas, or that most of the workers may have had permanent residences in Texas, does not outweigh the fact that the *place of activity* was primarily Louisiana. Since the

13

applicable law dictates that place of activity is more significant in a business enterprise such as Meaux's, the undersigned concludes that Meaux's principal place of business was in Louisiana at the time of removal, within the meaning of 28 U.S.C. §1332(c)(1).  Since there is no diversity between plaintiffs and defendant, this court lacks subject matter jurisdiction, and this matter must be remanded to the state court.

**3.   _Attorney Fees and Costs_**

Plaintiffs seek costs and expenses, including attorney's fees incurred due to Meaux's improper removal of the matter.  Title 28 U.S.C.A. § 1447(c) provides that when a case is remanded, the remanding court "may require payment of just costs and any actual expenses, including attorney fees. . . ".  An award of costs does not require a showing of bad faith. News-Texan, Inc. v. City of Garland, Tex., 814 F.2d 216, 220 (5th Cir. 1987) (footnote omitted). The court has discretion to award attorney's fees.  Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir. 2004).  In determining whether fees should be awarded when removal is ultimately determined to have been erroneous, such an award is permissible only if it was improper for the defendant to remove and is precluded if the defendant had objectively reasonable grounds to believe the removal was legally proper. Hornbuckle, 385 F.3d n.5 (citation omitted).

The facts presented here do not support an award of costs and attorney's fees.  Meaux's removal had arguable factual support, and it cannot be said that Meaux did not have objectively reasonable grounds to believe removal was proper.  Accordingly, the request for costs and attorneys' fees will be denied.

14

Signed at Lafayette, Louisiana, on April 29, 2008

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)