RECEIVED
AUG 2 7 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL FOGLEMAN, ET AL. | CIVIL ACTION NO. 07-1485 |
| VERSUS | JUDGE DOHERTY |
| MEAUX SURFACE PROTECTION, INC. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before the Court is an Appeal of the magistrate judge's Memorandum Ruling and Order on Motion to Remand [Doc. 26], in which the magistrate judge concluded defendant Meaux Surface Protection, Inc.'s principal place of business is in Louisiana, and that this Court, therefore, lacks subject matter jurisdiction over this case as there is no complete diversity of citizenship between the parties.[1] Meaux appeals the ruling; plaintiffs Michael Fogleman and Charles Kotrla filed a response [Doc. 31]; and Meaux filed a reply brief [Doc. 39].

The crux of the matter on appeal is the citizenship of Meaux Surface Protection, Inc. If Meaux's principal place of business is in Louisiana, and Meaux is thereby a citizen of Louisiana, there is not complete diversity of citizenship among the parties, and this Court does not have subject matter jurisdiction over this case.

For the following reasons, this Court AFFIRMS the *result* reached by the magistrate judge, but notes there are two issues of law set forth by the magistrate judge in her Ruling that require clarification. Notwithstanding the foregoing, this matter is REMANDED to the 15th Judicial District Court for the Parish of Lafayette, Louisiana.

---

[1] The magistrate judge's Memorandum Ruling and Order appear at Docs. 24 and 25.

## I. Factual Background and Procedural History

The factual and procedural background are set forth in the magistrate judge's Memorandum Ruling and are hereby incorporated by reference *in toto*.[2]

## II. Law and Analysis

### A. Standard of Review

With some exceptions inapplicable for purposes of this motion, a magistrate judge may hear and determine any pre-trial matter pending before a district court. 28 U.S.C. §636(b)(1). Federal law affords the magistrate judge broad discretion in the resolution of non-dispositive matters. *See* Fed. R. Civ. P.72(a). With regard to a non-dispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision demonstrates that the magistrate's determination was clearly erroneous or contrary to law. *Id*; *Castillo v. Frank*, 70 F.3d, 382, 385-86 (5th Cir. 1995).

Although the law is unsettled in this circuit on this point, district courts in this circuit have generally adhered to the view that motions to remand are non-dispositive pretrial matters and have applied the clearly erroneous standard of review pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a). *See. e.g., Lonkowski v. R.J. Reynolds Tobacco Co.,* No. Civ. A. 96-1192, 1996 WL 888182, at *2-4 (W.D. La. Dec. 10, 1996); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration and Production, Inc.,* 844 F. Supp. 1156, 1162 (S.D. Tex. 1994); *Bethay v. Ford Motor Co.,* No. Civ. A. 99-0367, 1999 WL 496488, at *1 (E.D. La. July 13, 1999). The Fifth Circuit has not indicated such motions should be treated otherwise. As such, this Court will apply the "clearly erroneous" standard

---

[2] This Court concludes the factual evidence as contained in the affidavit of plaintiff Michael Fogleman was properly considered by the magistrate judge and consideration thereof does not render the magistrate judge's factual findings erroneous. However, this Court concludes this matter should be remanded irrespective of the evidence contained in Mr. Fogleman's affidavit, for the reasons stated herein.

of review to the magistrate judge's Ruling.

B.  **Standard for Removal**

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). This Court must presume a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Howery*, 243 F.3d at 916. Thus, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Property and Cas. Insurance. Co.*, 276 F.3d 720, 723 (5th Cir.2002), *citing De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995). *See also Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 804 (5th Cir.1991) ( "The burden of proving that complete diversity exists rests upon the party who seeks to invoke the court's diversity jurisdiction."), *quoting Getty Oil Corp . v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.1988). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723, *citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000).

C.  **Citizenship of Corporations**

Under 28 U.S.C. §1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . " A corporation may have only one principal place of business for diversity purposes. *J.A. Olson Co. v. City of Winona*, 818 F.2d 401 (5th Cir. 1987). The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), *citing Gaitor v. Peninsular & Occidental*

*Steamship Co.*, 287 F.2d 252, 253-54 (5th Cir.1961).

In determining a corporation's principal place of business, the Fifth Circuit has adopted the "total activity test," which requires consideration of two main "focal points:" the location of the corporation's "nerve center" and its "place of activity." *J.A. Olson*, 818 F.2d at 411. The Fifth Circuit has stated that neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather, courts are to "examine the totality of the facts, including the corporation's organization and the nature of its activities, to determine which of these focal points predominates." *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876 (5th Cir. 2004), *citing J.A. Olson*, 818 F.2d at 406. In the seminal case of *J.A. Olson*, the court noted:

> *Thus, neither the nerve center nor the place of activity test inflexibly dictates the corporation's principal place of business. Rather, the tests simply stand for general rules regarding the determination of a particular corporation's principal place of business:* the principal place of business of a far flung corporation will generally be its nerve center, *see Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y. 1959); the principal place of business of a corporation with significant administrative authority and activity in one state and lesser executive offices but principal operations in another state is generally the district of the former, *see Kelly v. U.S. Steel Corporation*, 284 F.2d 850 (3rd Cir. 1960); and the principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations, *see Lurie Co. v. Lowe's San Francisco Hotel Corporation*, 315 F.Supp. 405 (N.D.Ca. 1970). *These rules, however, are applied on a case-by-case analysis, weighing the particular facts. The two tests are therefore not mutually exclusive but rather complementary.*

818 F.2d at 409 (emphasis added).

In evaluating the "activity" of the corporation in question, the Fifth Circuit considers whether the nature of the activity in question is "active" or "passive," and whether it is "labor-intensive" or "management-demanding." In *J. A. Olson*, the Fifth Circuit reasoned:

> We must consider the number of locations where the corporation carries on its activities; obviously, the *place* of operations of a corporation that carries on a single activity is more significant than one of many *places* of operations of a corporation

4

> with diffuse activities. Furthermore, we consider the importance of the particular activity to the corporate purpose and to the corporation as a whole; significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity. We also see as significant the degree to which the corporation's activities bring it into contact with the community. In examining the corporation's local contacts, we look at the number of employees in the given locale and the extent to which the corporation participates in the community through purchase of products, supplies and services, sales of finished goods, and membership in local trade or other organizations.

818 F.2d at 211-12 (emphasis in original).

According to the Fifth Circuit, the "nerve center" test is primarily limited to situations involving "corporation[s]. . . engaged in far-flung and varied activities which are carried on in different states." *J. A. Olson*, 818 F.2d at 407, *citing Scot Typewriter Co v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959); *Lugo-Vina v. Pueblo Int'l, Inc.*, 574 F.2d 41, 43 n.2 (1st Cir. 1978) ("nerve center" test most appropriate for holding company); *Spector v. Rex Sierra Gold Corp.*, 227 F.Supp. 550, 551 (S.D.N.Y. 1964) ("nerve center" test inapposite to company engaged in one activity in one state). In such situations:

> The nerve center, or corporate offices, will clearly be the principal place of business at which a corporation does business; the corporation's activities are dispersed to the point that no place in which the corporation conducts operations or activities can be denoted "principal."

*J.A. Olson*, 818 F.2d at 407.

On the other hand, the "place of activity" test is often utilized when a company's day-to-day operations and management outweigh the activities and formulation of overall policy. This test was succinctly explained by the court in *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405 (N.D.Cal.1970), a case the Fifth Circuit called a "classic case, cited often by the commentaries, that graphically illustrates the dominance of the place of activities over the nerve center as a means of

determining principal place of business." *See J. A. Olson*, 818 F.2d at 409. In *Lurie*, the defendant corporation was incorporated in Delaware and had its principal office in New York:

> The corporation had been organized to operate a hotel in California and that was its only activity. Rejecting the use of the "nerve center" test as being applicable only to wide-spread operations in several states, the court noted that *"[w]here . . . the corporation has its physical operations concentrated in one state and its administrative or executive offices in another state, the place of operations is more frequently considered as decisive."* (quoting 1 Moore's Federal Practice, 717.77 ¶ 0.77 [3.-4] ). The court considered the operations in California, which included the corporation's only assets, the vast majority of its employees and responsibility for day-to-day management, and held them to "outweigh the activities and formulation of overall policy in New York."

*J. A. Olson*, 818 F.2d at 416, *citing Lurie*, 315 F.Supp. at 412 & 416 (emphasis added).

### D. The Magistrate Judge's Report and Recommendation

The magistrate judge applied the "place of activity" test to conclude Meaux's principal place of business is in Lafayette, Louisiana, not Houston, Texas, as alleged by Meaux. As such, the magistrate judge concluded this Court does not have subject matter jurisdiction over this case and remanded the case back to state court.

On appeal, Meaux argues the magistrate judge committed the following errors: (1) the magistrate judge's decision was based on inadmissible facts, i.e., the facts contained in plaintiff Michael Fogleman's affidavit, resulting in factual findings that are clearly erroneous; and (2) the magistrate judge applied the "place of activity" test incorrectly.

Before addressing Meaux's arguments, this Court finds it must address and clarify two legal issues raised by the magistrate judge in her Ruling. First, notwithstanding the magistrate judge's suggestion in footnote 15 of her ruling that diversity of citizenship is determined at the time of *removal*, this Court notes the law on this point is actually more nuanced. Generally, diversity of citizenship is assessed at the time an action is *filed*. *See Grupo Dataflux v. Atlas Global Group, L.P.*,

6

541 U.S. 567, 570-71, 124 S.Ct. 1920, 1924 (2004) (it is hornbook law that "the jurisdiction of the court depends upon the state of things at the time of the action brought."), citing *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). *See also Coury v. Prot*, 85 F.3d 244, 248-49 (5th Cir. 1996) ("Consistent with general principles for determining federal jurisdiction, diversity of citizenship must exist at the time the action is commenced."), citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989). However, in cases *removed from state court*, diversity of citizenship must exist *both at the time of filing in state court and at the time of removal to federal court*. *Coury*, 85 F.3d at 248-49. If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties. *Id.*, citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957). *But see Manguno*, 276 F.3d at 723 (stating time of removal, only, is critical: "To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal."), *citing Cavallini v. State Farm Mut. Auto Insurance. Co.*, 44 F.3d 256, 264 (5th Cir.1995).

Considering the foregoing, it appears when an action is originally brought in federal court, diversity of citizenship is determined at the time of filing. However, when an action is removed from state court to federal court, the federal court must look at diversity of citizenship both at the time of filing and at the time of removal, although this Court acknowledges some cases direct courts to look at the time of filing only.

This Court has question regarding whether the clarification of this legal standard affects the issues before the Court as a practical matter, as there does not appear to be any evidence showing there was a substantial change in operations at Meaux between July 23, 2007, the date of filing of

the lawsuit, and September 7, 2007, the date the suit was removed to this Court. Nevertheless, this Court notes the proper, clarified standard for purposes of the record.

The second issue concerns the magistrate judge's application of the "place activity" test, which Meaux contends the magistrate judge applied incorrectly. In the instant case, although the parties contend – and the magistrate judge concluded - the proper standard to be applied in this matter is the formula that gives more weight to the "place of activity" as opposed to the "nerve center" of the defendant corporation, this Court concludes this is not the appropriate standard to be applied, although the Court acknowledges neither standard is inflexible. The jurisprudence holds "when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant." *J. A. Olson*, 818 F.2d at 406. On the other hand, the "nerve center" test is primarily utilized in situations involving "corporation[s]. . .engaged in far-flung and varied activities which are *carried on in different states.*" *J. A. Olson*, 818 F.2d at 407, citing *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y.1959); *Spector v. Rex Sierra Gold Corp.*, 227 F. Supp. 550, 551 (S.D.N.Y. 1964) ("nerve center" test inapposite to company engaged in one activity in one state)(emphasis added).

Here, the magistrate judge appears to have accepted without additional inquiry, the arguments of the parties that the "place of activity" of Meaux should be given more weight than Meaux's "nerve center." However, Meaux does not have its sole operations in one state and executive offices in another. Rather, Meaux is a German corporation with a subsidiary housed in Houston, Texas, offices in Lafayette, Louisiana, a supply warehouse in Broussard, Louisiana, and operations in Louisiana, Texas, the Gulf of Mexico, and "international waters." Meaux conducts activities and provides painting services throughout the Gulf of Mexico *region*, waters off the coasts of Texas and Louisiana

and within the Gulf of Mexico, in Texas itself, in Louisiana itself, and in "international waters," which likely indicates locations on the Outer Continental Shelf, a federal enclave. Indeed, Meaux conducts activities and provides painting services in multiple states, throughout the waters of the Gulf of Mexico, within a federal enclave, and in "international water," in effect anywhere such opportunities exist. Bearing in mind the two tests are not inflexible but rather require consideration of all of the facts, this Court nevertheless concludes Meaux is more akin to a "far flung" corporation. As such, this Court concludes the "nerve center" test is also implicated given the facts of this case. Thus, this Court must also, determine the location of Meaux's "nerve center" in order to conduct the requisite "case by case analysis, weighing the particular facts," in order to determine the location of Meaux's principal place of business and, ultimately, whether this Court has subject matter jurisdiction.

In support of its argument that Meaux's principal place of business is Houston, Texas, Meaux submits the affidavits of two former employees, Elias Vervilles, who was Chief Executive Officer of Meaux at the time the instant lawsuit was filed on July 23, 2007, and Rene Godoy, who was President and Chief Operating Officer of Meaux on July 23, 2007 and who became Meaux's President and Chief Executive Officer at the end of July 2007. The affidavits of the foregoing individuals are virtually identical; both attest, generally, that, as of July 23, 2007, all executive, recruiting, accounting, and operational procedures of the company were performed in Houston, Texas, while the Lafayette, Louisiana office merely performed scheduling and dispatch functions. However, Mr. Godoy – who was the President and Chief Operating Officer of Meaux at the time the lawsuit was filed and President and Chief Executive Officer of Meaux at the time Meaux filed its appeal of the magistrate judge's ruling – attests that *he lives in Baton Rouge, Louisiana* and *travels*

*"to Houston, Texas twice monthly to call upon Meaux's customers and to complete business on Meaux's behalf that cannot be conducted from the Lafayette scheduling office."* No further information explaining what activities Mr. Godoy performs in Texas, as opposed to Louisiana, is provided. Consequently, this Court cannot determine what corporate functions *the Chief Executive Officer*, Mr. Godoy, performs in Texas, as opposed to Louisiana and the Chief Executive Officer's true function within the operation of the company.

At the very least, this Court finds Mr. Godoy's affidavit is internally inconsistent; that is, Mr. Godoy states all important operational functions of the company are performed in Houston, but that he, the Chief Executive Officer, lives in Baton Rouge and only travels to Houston *two times per month*, to do business "that cannot be conducted" in Lafayette. Mr. Godoy's affidavit also contradicts the affidavit of Mr. Vervilles – who states, within his experience with the company as Chief Executive Officer, all executive functions were performed in Houston. Thus, the Court concludes Mr. Godoy's testimony creates a question as to where the activity of running the business of Meaux is, in reality, conducted, and thus where Meaux's "nerve center" actually is, and thus, where Meaux's true principal place of business is located. Indeed, Mr. Godoy's affidavit appears to confirm the finding of the magistrate judge – albeit viewed through an overly narrow prism – that the majority of Meaux's substantive day-to-day revenue-generating activities were organized, supervised, managed and staged in Louisiana at the time of the filing and removal of the lawsuit, inasmuch as certain operations were conducted in Louisiana and Mr. Godoy as Chief Executive Officer, performed the operations as Chief Executive Officer from Louisiana on all but two days out of each month.

Furthermore, under either the "place of activity" or "nerve center" analysis, made within a

"case by case analysis weighing [all] the particular facts" this Court finds Meaux has not carried its burden and in particular has not answered the questions raised by the magistrate judge, including exactly what executive functions are conducted, and how they are conducted, in Houston, and which executive functions are conducted, and how they are conducted, in Louisiana. This Court, also, concludes Meaux has not – with the evidence presented on appeal – supported its conclusory allegation that Meaux's Louisiana activities are passive in comparison to its Texas activities, when its Chief Executive Officer conducts his business and works primarily in Louisiana and only travels to Houston "two times per month" to visit clients and to do business "that cannot be done in Lafayette." Although passivity of activity is not as significant under the "nerve center" analysis as it is under the "place of activity" test, the Court notes the foregoing, as it is illustrative of the conclusory nature of the allegations presented by Meaux.

As previously noted, neither the "nerve center" nor the "place of activity" test inflexibly dictates the corporation's principal place of business. Rather, "the tests simply stand for general rules regarding the determination of a particular corporation's principal place of business," and "are to be applied on a case-by-case analysis, weighing the particular facts." *J.A. Olson*, 818 F.2d at 409-10. Furthermore, Meaux has the burden of proof on the issue of whether removal was proper – not plaintiffs – and any ambiguities are to be construed against removal, as the removal statute is strictly construed in favor of remand. *See, e.g., Manguno, infra*, at 723, *citing Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000). Based on the evidence provided by Meaux in support of its appeal, which includes affidavits that when read closely, contradict each other and one of which is internally inconsistent, this Court concludes under either the "place of activity" test or the "nerve center" test, and under a "case by case analysis weighing [all] the particular facts" Meaux has failed to carry its

burden to support removal and defeat remand.

This Court will now turn to Meaux's argument that the testimony provided by Michael Fogleman is inadmissible. This Court notes the affidavit of Michael Fogleman contains facts that pre-date the date of the filing of the lawsuit. Meaux argues because the testimony of Mr. Fogleman references events that pre-date the filing of the instant lawsuit, Mr. Fogleman's affidavit is inadmissible for purposes of ruling on the motion to remand and should not have been considered by the magistrate judge or be considered by this Court.

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 states "evidence which is not relevant is not admissible." Fed. R. Evid. 402.

Although this Court does not rely on the testimony of Mr. Fogleman in determining where Meaux's principal place of business is, this Court notes the testimony of Mr. Fogleman is *not irrelevant* to the issue on appeal. Indeed, to the extent Mr. Fogleman's testimony helps to clarify the facts presented and bears on the manner in which the Houston and Lafayette offices have conducted their affairs *over the course of the last several years*, and thus, might grant some degree of clarity to or bear on how the Houston and Lafayette offices were actually operating at the relevant periods of time, or bears on the credibility of Mr. Godoy and Mr. Vervilles, the Court finds the testimony to be relevant and admissible. Notwithstanding the foregoing, this Court specifically does not base its ruling on the testimony of Mr. Fogleman, but rather, on the fact that Meaux has not carried its burden.

Therefore, after consideration of the foregoing legal standards and the evidence presented,

this Court concludes Meaux, as the removing party, fails to carry its burden of showing federal jurisdiction exists and removal was proper. Therefore, notwithstanding the legal issues in the magistrate judge's Ruling that require clarification, this Court AFFIRMS *the result* reached by the magistrate judge, but for the reasons noted above. Accordingly, this matter is REMANDED to the 15th Judicial District Court for the Parish of Lafayette, Louisiana.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 27 day of August, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE